ANDERSON, Respondent, vs. FETZER and another, Appellants.

*January 9 — January 28, 1890.*

*Pleading: Counterclaim: Judgment: Evidence.*

1. In an action for the proceeds of posts sold by the defendants for the plaintiff on commission, there was a counterclaim for advances made upon posts and ties indiscriminately. The court found that the proceeds of both ties and posts exceeded the advances made thereon by a sum less than that claimed in the complaint. *Held,* that the form of the issue did not preclude a recovery of such sum.

2. Written statements by defendants' agents as to the quality of ties delivered by plaintiff, such statements not being verified in any way and there being nothing in the contract of the parties to make them evidence, are not admissible on behalf of the defendants.

APPEAL from the Circuit Court for *Door* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action is to recover $411.02, being the proceeds of 6,603 cedar posts sold by the defendants on commission for the plaintiff. The defendants counterclaimed, and alleged, in effect, that January 27, 1887, the plaintiff entered into a contract in writing with the defendants as follows: "Received of *Youngs & Fetzer* five hundred dollars on account of ties *now on hand* on Harris dock, at Bay View, Door county. Said *Youngs & Fetzer* is to advance *E. N. Anderson* at the rate of *18 cents on each good cedar tie* bought by him, said ties to be owned by said *Youngs & Fetzer;* and when shipped all profits on said ties to be equally divided between *Youngs & Fetzer* and said *E. N. Anderson*, said *Youngs & Fetzer* to furnish above amount on each good tie, and said *Anderson* to do all necessary labor in buying, shipping, etc., to offset the use of money furnished by said *Youngs & Fetzer*. *There is up to date 3,625 cedar ties on above dock.* E. N. ANDERSON. Bay View, January 27th, 1887. Accepted. YOUNGS & FETZER." That under said contract the defendants advanced moneys to the plaintiff on said ties, as therein mentioned, and also on said posts indiscriminately, to the amount of $1,800. The plaintiff replied to the counterclaim, and denied each and every allegation thereof.

A jury being waived by the parties, the cause was tried by the court, and at the conclusion the court found, as matters of fact: (1) That during the year 1887 the defendants were copartners, doing business in Door county, Wisconsin; (2) that January 27, 1887, the plaintiff and defendants entered into the written contract of which a copy is given above; (3) that prior to March 18, 1887, the defendants had advanced to the plaintiff under said contract the sum of $900, and said plaintiff had bought for said defendants

about 6,000 ties, including culls; (4) that March 18, 1887, said plaintiff had on hand, belonging to himself, about 6,000 cedar posts; (5) that on March 18, 1887, the plaintiff was in great need of funds to meet an obligation to a third party then pressing him, and obtained from the defendants a further advance of $700, to be repaid in good ties under said contract, and posts at an advance of one half cent each over the price paid for them by the plaintiff; (6) that pursuant to said agreement the plaintiff delivered to the defendants 6,603 cedar posts of four different sizes and prices, and which, at the prices agreed upon for them, amounted to $411.04; (7) that the plaintiff purchased and delivered to the defendants, under said written contract, 7,568 good ties, amounting, at the contract price of $.18 each, to $1,362.24; (8) that no profits were realized on the sale of said ties; (9) that the plaintiff paid the sum of $33 for dockage on said cedar posts, but it does not appear that he was authorized or requested to do so by said defendants.

As conclusions of law the court finds: (1) That the plaintiff is entitled to judgment against the defendants for the sum of $411.04 for posts, and said sum of $1,362.24 for ties, less the sum of $1,600, advanced as aforesaid, to wit, for the sum of $173.27, with interest from February 11, 1883, amounting in the whole to $180.48, with costs; and judgment was ordered to be entered thereon accordingly. From the judgment so entered the defendants appeal.

For the appellants there was a brief by *Hamilton & Bacchus*, attorneys, and *Turner & Timlin*, of counsel, and oral argument by *W. H. Timlin*.

For the respondent there was a brief by *O. E. & Y. V. Dreutzer*, and oral argument by *O. E. Dreutzer*.

CASSODAY, J. It is claimed that the trial court found a balance due the plaintiff on the counterclaim of the defendants, and not upon the plaintiff's cause of action. The

complaint was for the proceeds of cedar posts, as stated. The counterclaims were for advances and payments made on account of the ties and fence posts indiscriminately. The trial court found, in effect, that the $900 was advanced upon the ties, and the $700 on ties and posts, and that the proceeds of the ties and posts received by the defendants from the plaintiff amounted, in the aggregate, to $1,773.28, or $173.28 in excess of the moneys so advanced. We cannot hold that the mere form of the issues precluded the plaintiff from recovering the true balance in his favor on account of both ties and posts, since it was considerably less than the amount claimed in the complaint.

The principal contention of the defendants is that the evidence fails to support the seventh finding of fact, as to the number of "good ties" purchased by the plaintiff and delivered to the defendants under the written contract set forth. It is claimed that a large per cent. of the ties therein mentioned were culls, or rejected, and did not pass inspection in Chicago, where it was understood they were to be sold and were in fact sold by Wm. Ripley & Sons, as agents for and on account of the defendants.

The evidence principally relied upon by the defendants to prove that a large per cent. of the ties thus delivered were not "good cedar ties," within the meaning of the contract, is a written statement, made by Wm. Ripley & Sons, of a cargo of such ties therein said to have arrived in Chicago April 18, 1887, by the vessel "Thomas H. Smith," on account of the defendants, and another such statement made by them of ties therein said to have arrived July 15, 1887, by the vessel "Eliza Day," on account of the defendants. Neither of these statements was sworn to or verified in any way. Neither of the firm of Wm. Ripley & Sons, nor any one in their employ, or any other person, testified to the facts contained in either of those statements. The written contract contains nothing which

could make such statements evidence. Such statements made by agents of the defendants were no more admissible in their behalf than their own statements. They were mere hearsay, and were hence properly rejected. The defendants admitted that there was no standard for good ties in Chicago; that whether a given quantity of ties passed inspection there or not depended very much upon the supply and demand; that at times perfectly good ties were classed as inferior in that market, and at other times the reverse; that a good tie in Door county meant a tie of certain dimensions and sound. Their proofs fail to show that the ties delivered fell below that standard. They were not kept separately in Chicago, but piled in with others. The written contract states that there were 3,625 on the dock at the time it was made. The defendants saw them at the time. There is evidence to the effect that when the advances were made, March 18, 1887, there were some 6,000 ties on the dock, open to the inspection of the defendants; that all the bad ties were thrown out before shipment; and that the plaintiff delivered the number of good ties found by the court. Upon the evidence in the record, we would not be justified in disturbing the seventh, nor any, of the findings of the trial court.

*By the Court.*— The judgment of the circuit court is affirmed.